IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
DEDE DUNN and MURIEL LYTLE, on    )
behalf of themselves and others   )
similarly situated,               )
                                  )
              Plaintiffs,         )
                                  )
         v.                       )        21-CV-665
                                  )
ENHANCED RECOVERY COMPANY,        )
LLC,                              )
                                  )
              Defendant.          )
```

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, Chief District Judge.

This putative class action alleges violations of state and federal law related to debt collection activity. Before the court is Plaintiffs' motion to remand (Doc. 20) and motion for partial judgment on the pleadings (Doc. 23). The motions are fully briefed. For the reasons set forth below, Plaintiffs' motion to remand will be granted and Plaintiffs' motion for partial judgment will be denied as moot.

I.  **BACKGROUND**

Defendant Enhanced Recovery Company, LLC ("ERC") is a debt collector and collection agency incorporated under the laws of Delaware with a principal place of business in Florida. (Doc. 14 at ¶¶ 9-10.) ERC is regularly engaged in the business of collecting debts owed by consumers in North Carolina. (Id. at ¶ 11.) Plaintiffs Dede Dunn and Muriel Lytle are citizens and

residents of North Carolina and allegedly owe debts to ERC. (Id. at ¶¶ 7,8.)

Plaintiffs commenced this action by filing their complaint in the General Court of Justice, Superior Court Division, of Rowan County, North Carolina on July 9, 2021. (Doc. 2.) The complaint alleges that in the process of seeking to collect the alleged debt, ERC unlawfully shared their sensitive financial information with unauthorized third-party vendors in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"), the North Carolina Debt Collection Act, N.C. Gen. Stat. § 58-50 et seq. ("NCDCA"), and the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1. (Doc. 14 at ¶ 1.) On August 25, ERC removed the action to this court asserting federal question jurisdiction pursuant to 28 U.S.C. § 1331. (Doc. 1.) Plaintiffs filed an amended complaint on October 10, adding a claim under the North Carolina Collection Agency Act, N.C. Gen. Stat. § 58-70. (Doc. 14.) ERC filed an answer, generally denying Plaintiffs' allegations. (Doc. 16.)

Plaintiffs now move the court to remand the case to state court, arguing they lack standing for the federal claim and therefore the court lacks jurisdiction. (Doc. 20.) Plaintiffs also move the court for partial judgment on the pleadings, arguing that the briefing makes clear that ERC violated the FDCPA and NCDCA, and the only issues to be determined at a later date are

2

class certification and damages.  (Doc. 23.)  ERC opposes both motions.

**II.  ANALYSIS**

The court applies the usual test for analyzing standing at the pleadings stage and will accept as true the factual allegations in the complaint.  See Beck v. McDonald, 848 F.3d 262, 270 (4th Cir. 2017) (accepting as true factual allegations in complaint when analyzing standing at the pleadings stage).  A party invoking federal jurisdiction must establish standing for a court to review his claims.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  As ERC is the party invoking federal jurisdiction, it must show that the complaint includes "clearly allege[d] facts demonstrating each element" of standing.  Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (internal quotations and citations omitted); Strawn v. AT&T Mobility LLC, 530 F.3d 293, 296-97 (4th Cir. 2008).  To establish standing, a party must first show that the plaintiff has suffered an "injury in fact."  Lujan, 504 U.S. at 560-61.  That injury must be "fairly traceable to the challenged conduct of the defendant, and . . . likely to be redressed by a favorable judicial decision."  Spokeo, 578 U.S. at 338.

To suffice, the allegations in the complaint must claim that a plaintiff has suffered a concrete harm.  Id. at 339-40.  Tangible harms, such as physical or monetary harms, "readily qualify as concrete injuries under Article III."  TransUnion LLC v. Ramirez,

3

141 S. Ct. 2190, 2204 (2021). Intangible harms may also qualify as concrete injuries. Spokeo, 578 U.S. at 340. Those harms are sufficiently concrete when they have a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." TransUnion, 141 S. Ct. at 2204. A plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." Spokeo, 578 U.S. at 341. Put differently, "an injury in law is not an injury in fact." TransUnion, 141 S. Ct. at 2200-01. At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." Lujan, 504 U.S. at 561.

Plaintiffs allege that ERC violated the FDCPA and the NCDCA by communicating information regarding their debts to a third-party vendor retained to assist with collection activity. (Doc. 14 at ¶ 2.) The third-party vendor would take that information, place it into a prewritten template, and mail that document to Plaintiffs and other individuals who owed outstanding debt. (Id. at ¶ 25.) Though Plaintiffs base their federal claim on this conduct, several courts have found, after the Supreme Court's decision in TransUnion, that the sharing of such information with the third-party vendor is not actionable under the FDCPA. See, e.g., TransUnion, 141 S. Ct. at 2210 n.6 (finding the argument

4

that TransUnion had injured the plaintiffs by distributing information to vendors "unavailing," because American courts did not traditionally recognize "disclosures to printing vendors as actionable publications" (citations omitted)); Cavazzini v. MRS Assocs., --- F. Supp. 3d ----, 2021 WL 5770273, at *6 (E.D.N.Y. 2021) (noting Congress did not intend to target "all communications by debt collectors to third parties," and disclosure of private data to a third-party vendor did not constitute an injury under the FDCPA); Ciccone v. Cavalry Portfolio Servs., LLC, No. 21-CV-2428(JS)(JMW), 2021 WL 5591725, at *5 (E.D.N.Y. Nov. 29, 2021) (same); Stewart v. Healthcare Revenue Recovery Grp., LLC, No. 3:20-CV-00679, 2022 WL 200371, at *17 (M.D. Tenn. Jan. 21, 2022) (same); Liu v. MRS BPO, LLC, No. 21 C 2919, 2021 WL 5630764, at *4 (N.D. Ill. Nov. 30, 2021) (same); Brown v. Alltran Fin., LP, No. 1:21-CV-595, 2022 WL 377001, at *6 (M.D.N.C. Feb. 8, 2022) (same); Sputz v. Alltran Fin., LP, No. 21-CV-4663 (CS), 2021 WL 5772033, at *3 (S.D.N.Y. Dec. 5, 2021) (same). Here, the court need not reach that question, which is more properly a challenge pursuant to Federal Rule of Civil Procedure 12(b)(6), and can assume, without deciding, that sharing Plaintiffs' information with the third-party mailing vendor would be a violation of the FDCPA. That is because a statutory violation alone is insufficient to confer standing; a violation does not necessarily cause a concrete harm,

5

and none is alleged here.  Spokeo, 578 U.S. at 341; TransUnion, 141 S. Ct. at 2205.

In TransUnion, a class of consumers sued TransUnion, a credit reporting agency, alleging violations of the Fair Credit Reporting Act.  141 S. Ct. at 2200.  TransUnion had allegedly failed to adopt procedures to maintain accurate credit files when it wrongfully designated plaintiffs as drug traffickers, potential terrorists, and other serious criminals.  Id. at 2200-01.  For some of the class members, TransUnion distributed these credit files with incorrect information to third-party entities, such as employers, retailers, and auto dealerships, who sought credit history information of the class members.  Id. at 2200.  For other members of the class, the credit files were kept internal to TransUnion and were never disclosed to third parties.  Id.

The Supreme Court equated the harm suffered by class members whose incorrect files were distributed to third-party creditors to the harm suffered in an action for defamation.  Id. at 2208-09.  "Under longstanding American law," the Court stated, "a person is injured when a defamatory statement that would subject him to hatred, contempt, or ridicule is published to a third party," and TransUnion's incorrect classification of the class members as potential terrorists, drug traffickers, or criminals which was then disclosed to third parties subjected those members to a substantially similar concrete harm.  Id. at 2208-09.

6

The class members whose credit files were not shared with a third party, however, lacked standing. Although their files contained the same incorrect information, there was no common law analogue "where the mere existence of inaccurate information, absent dissemination, amounts to concrete injury." Id. at 2209. As such, the risk of harm had the information been distributed did not create a concrete harm as there was no common law analogue and the harm was speculative in nature. Id. at 2211-12.

Importantly, there is no allegation here that the information disseminated by ERC to the third-party mailing vendor contained any misleading information akin to the credit files at issue in TransUnion. Nevertheless, violations of the FDCPA could cause intangible harm sufficient to constitute an injury in fact. See Foley v. Mary Washington Healthcare Servs., Inc., No. 21-CV-239, 2021 WL 3193177, at *3 (E.D. Va. July 28, 2021) (finding standing where plaintiff suffered the nominal economic harm of purchasing a stamp to dispute a debt in writing). However, Plaintiffs here have alleged no concrete injury.

The original complaint is silent on the type of harm Plaintiffs are alleged to have suffered from ERC's illegal sharing of information to the third-party vendor. Plaintiffs allege ERC "disclosed information to a third party without [their] prior consent." (Doc. 2 at ¶ 44.) ERC did so "with reckless disregard for the harm to Plaintiffs and the classes that could result from

7

Defendant's unauthorized disclosure of private and sensitive information." (Id. at ¶ 56.) According to Plaintiffs, that disclosure was "both unfair and unconscionable." (Id. at ¶ 58.) Even if that were true, ERC's failure to consider future harms caused by its disclosure of information to the third-party vendor is not a concrete harm, as it is too speculative. TransUnion, 141 S. Ct. at 2211-12. Nowhere do Plaintiffs allege what harm was caused by ERC's actions, merely alleging instead that ERC violated a statute and that doing so was "unfair."

Plaintiffs' amended complaint provides no additional insight. ERC directs the court to paragraphs in the amended complaint which do not relate to the harm allegedly suffered by Plaintiffs. For instance, Plaintiffs allege that "Defendant's conveyance of information regarding the Debt to a third-party vendor is an unreasonable publication," and "Plaintiffs did not consent to Defendant's communication to the third party concerning Plaintiffs' personal and/or confidential information." (Doc. 14 at ¶¶ 24, 50.) None of that describes an injury suffered by Plaintiffs. ERC has not "identified specific allegations of injury in fact from the alleged disclosure at issue," and, as such, "[t]he Court does not have subject matter jurisdiction and remand is appropriate." Brown v. Alltran Financial, LP, No. 1:21-CV-595, 2022 WL 377001, at *6 (M.D.N.C. Feb. 8, 2022).

ERC proffers numerous arguments against this conclusion.

8

Each is unpersuasive. For instance, ERC first argues that Plaintiffs' motion to remand is untimely, because Plaintiffs' "facial challenge" to standing "was required to be filed within 30 days of removal." (Doc. 22 at 3.) Standing is a threshold jurisdictional requirement and can be raised by any party or *sua sponte* by the court at any time. See Plyler v. Moore, 129 F.3d 728, 731 n.6 (4th Cir. 1997) (holding that issues regarding subject-matter jurisdiction "may be raised at any time by either party or sua sponte by this court").

ERC points to 28 U.S.C. § 1447(c), which requires that motions to remand "on the basis of any defect other than lack of subject matter jurisdiction" be filed within 30 days after the filing of a notice of removal. ERC contends that, when a party challenges subject matter jurisdiction by attacking the allegations supporting jurisdiction in the complaint and the court sustains that "facial attack," the court is not finding a lack of subject matter jurisdiction but rather concluding "that jurisdiction has not been properly alleged." (Doc. 22 at 4.) Because the court has not found a lack of subject matter jurisdiction, ERC argues, the subject matter exception in § 1447(c) does not apply. Under this theory, Plaintiffs' motion to remand was required to have been filed within 30 days after the filing of the notice of removal.

This argument is also unpersuasive. If ERC were correct, it

9

would prevent parties from challenging subject matter jurisdiction by raising facial challenges to the court's jurisdiction after § 1447(c)'s 30-day window. That construction is impermissible given the plain text of § 1447(c) that requires a remand notice to be filed within 30 days after the filing of the § 1446(a) notice of removal for "any defect *other than lack of subject matter jurisdiction*." 28 U.S.C. § 1447(c) (emphasis added). It also contradicts the well-founded case law that objections to standing "may be raised at any time." Henderson v. Shinseki, 562 U.S. 428, 434 (2011). Indeed, § 1447(c) clearly states that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded," 28 U.S.C. § 1447(c).

While ERC notes that "establishing an actual lack of subject matter jurisdiction can require discovery," discovery is not needed where the allegations of the complaint, even accepted as true, are insufficient in themselves. See SunTrust Bank v. Vill. at Fair Oaks Owner, LLC, 766 F. Supp. 2d 686, 689 (E.D. Va. 2011) (noting that because the motion to dismiss did "not challenge[] the accuracy of the complaint's allegations," but rather that subject matter jurisdiction was lacking even based on those allegations, no discovery was needed); Diop v. BMW of N.A., LLC, 511 F. Supp. 3d 679, 684 (E.D.N.C. 2021) (noting discovery is needed where facts necessary to resolving the motion "are not

10

Case 1:21-cv-00665-TDS-LPA   Document 31   Filed 07/06/22   Page 10 of 14

apparent on the face of the complaint" (citing Cruz v. Maypa, 773 F.3d 138, 146-47 (4th Cir. 2014)). Because Plaintiffs' motion to remand is based on the sufficiency of the allegations of the complaint which the court accepts as true, no discovery is needed. See Beck v. McDonald, 848 F.3d 262, 270 (4th Cir. 2017) (accepting as true factual allegations in complaint when analyzing standing at the pleadings stage). In fact, Plaintiffs' reply brief makes clear that Plaintiffs do not seek any damages from alleged viewing of their information by the third-party vendor. (See Doc. 25 at 3 ("ERC contends there is a factual issue over whether Defendant's letter vendor and employees ever reviewed the sensitive financial information transmitted by ERC. [DE 22, p.9]. Plaintiffs did not make that allegation. *See generally* [DE 14].") This renunciation renders any discovery on that issue moot.

ERC further contends that "[t]o properly challenge this Court's subject matter jurisdiction more than 30 days after removal, Plaintiffs must file evidence demonstrating an *actual* lack of standing." (Doc. 22 at 3.) It may be that many subject matter challenges may require an evidentiary record. But here the burden to prove removal, and thus this court's subject matter jurisdiction, rests on ERC as the removing party. See Scott v. Cricket Comms., LLC, 865 F.3d 189, 194 (4th Cir. 2017) ("If the plaintiff challenges removal, however, the defendant bears the burden of demonstrating that removal jurisdiction is proper"

11

(internal quotations and citations omitted)). "If a plaintiff files suit in state court and the defendant seeks to adjudicate the matter in federal court through removal, it is the <u>defendant</u> who carries the burden of alleging in his notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter." <u>Strawn v. AT&T Mobility LLC</u>, 530 F.3d 293, 296-97 (4th Cir. 2008) (emphasis added). Moreover, as already noted, a sufficient showing can be made where the allegations of the complaint are themselves deficient.

Finally, ERC points to an Eleventh Circuit opinion to argue that "Plaintiffs' standing is further supported by the case law that was in effect at the time this matter was filed against ERC." (Doc. 22 at 7.) In that case, a panel of the Eleventh Circuit concluded that a debt collector's interactions with a third party, a violation of the FDCPA, was properly viewed as an invasion of individual privacy, which bore "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." <u>Hunstein v. Preferred Collection & Mgmt. Servs.</u>, 994 F.3d 1341, 1347 (11th Cir. 2021) (quoting <u>Spokeo</u>, 578 U.S. at 341). As such, the violation of the FDCPA conferred standing on the plaintiffs and thus subject matter jurisdiction to the court. After <u>TransUnion</u>, the Eleventh Circuit revisited its decision in <u>Hunstein</u>, again concluding that there was standing over these claims. <u>Hunstein</u>, 17 F.4th 1016, 1033

12

(11th Cir. 2021).

However, those opinions have been vacated while the Eleventh Circuit reconsiders Hunstein and its embedded issue of standing *en banc*. Hunstein, 17 F.4th 1103 (11th Cir. 2021). Two, now vacated, opinions from an out-of-circuit court are thin support for standing in this case. In contrast, the conclusion that a violation of the FDCPA, without an articulation of any concrete harm, is insufficient to confer standing is consistent with the vast majority of cases to have addressed the issue. See Brown v. Alltran Fin., LP, No. 1:21-CV-595, 2022 WL 377001, at *6 (M.D.N.C. Feb. 8, 2022) (remanding similar case where plaintiff had failed to show violation of the FDCPA caused her an injury in fact); Asbury v. Credit Corp Sols., Inc., No. 1:21-CV-650, 2022 WL 377011 (M.D.N.C. Feb. 8, 2022) (same); Hatchett v. Fin. Bus. & Consumer Sols., Inc., No. 1:21-CV-622, 2022 WL 377002 (M.D.N.C. Feb. 8, 2022) (same); Barclift v. Keystone Credit Servs., LLC, --- F.Supp.3d ----, 2022 WL 444267 (E.D. Pa. 2022) (same); see, e.g., Nabozny v. Optio Sols., LLC, --- F.Supp.3d ----, 2022 WL 293092 (W.D. Wis. 2022); Williams v. Portfolio Recovery Assocs., LLC, No. 21-CV-5656(DRH), 2022 WL 256510 (E.D.N.Y. Jan. 27, 2022); Luisi v. Portfolio Recovery Assocs., LLC, No. 21-CV-6252(JS)(SIL), 2022 WL 198530 (E.D.N.Y. Jan. 21, 2022); Stewart v. Healthcare Revenue Recovery Grp., LLC, No. 3:20-cv-00679, 2022 WL 200371 (M.D. Tenn. Jan. 21, 2022); Soto v. Fin. Recovery Servs., Inc., No. 21-CV-

13

5524(JS)(AYS), 2022 WL 203657 (E.D.N.Y Jan. 21, 2022); Nyanjom v. NPAS Sols., LLC, No. 21-CV-1171-JAR-ADM, 2022 WL 168222 (D. Kan. Jan. 19, 2022); Keller v. Client Servs., Inc., No. 3:21-cv-50218, 2021 WL 5578794 (N.D. Ill. Nov. 30, 2021).

In summary, the allegations in the complaint and amended complaint, even if true, merely assert that ERC violated the FDCPA without Plaintiffs' consent. Because Plaintiffs have alleged only a statutory violation and not a concrete injury in fact, subject matter jurisdiction is lacking and remand is necessary.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that the motion to remand (Doc. 20) is GRANTED for lack of subject matter jurisdiction over the FDCPA claim, and the case is REMANDED to the General Court of Justice, Superior Court Division, of Rowan County, North Carolina.

IT IS FURTHER ORDERED that Plaintiffs' motion for partial judgment on the pleadings (Doc. 23) is DENIED without prejudice as moot as the court lacks subject matter jurisdiction.

                                                /s/   Thomas D. Schroeder
                                            United States District Judge

July 6, 2022

14

Case 1:21-cv-00665-TDS-LPA   Document 31   Filed 07/06/22   Page 14 of 14